UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ANNAMARIE A.[1],                                          1:20-CV-1326-MJR
                                                         DECISION AND ORDER
                              Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

———————————————————————

        Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States
Magistrate Judge conduct all proceedings in this case. (Dkt. No. 20)

        Plaintiff Annamarie A. brings this action pursuant to 42 U.S.C. §§ 405(g) and
1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social
Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both
parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.

        For the following reasons, plaintiff's motion (Dkt. No. 16) is granted, the
Commissioner's motion (Dkt. No. 18) is denied, and the case is remanded to the
Commissioner for further proceedings.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P.
Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York,
this Decision and Order will identify plaintiff using only her first name and last initial.

**BACKGROUND**[2]

On January 8, 2009, plaintiff filed for DIB and SSI, alleging disability beginning January 16, 2008. (*See* Tr. 133-41)[3] Plaintiff's disability benefits application was initially denied on June 19, 2009. (Tr. 65-77) Plaintiff timely filed a written request for a hearing. (*Id.*) A hearing was held before Administrative Law Judge William E. Straub ("the ALJ") on December 7, 2010. (Tr. 35-59) ALJ Straub issued an unfavorable decision on January 24, 2011, finding that plaintiff's impairments did not prevent her from performing her past relevant work as a teacher and concluding that plaintiff was not under a disability, as defined by the Act, at any time from January 16, 2008 through January 24, 2011. (Tr. 17-35) Plaintiff filed a timely request for review, which the Appeals Council denied on May 10, 2012. (Tr. 1-5) Plaintiff commenced a civil action in the Western District of New York, and this Court affirmed the ALJ's disability denial on October 25, 2013. *See Abbott v. Colvin*, 1:12-CV-647, 2013 U.S. Dist. LEXIS 190372 (W.D.N.Y. Oct. 25, 2013).

Plaintiff next filed an appeal with the United States Court of Appeals for the Second Circuit. *See Abbott v. Colvin*, 13-4893, 596 Fed. Appx. 21 (2d Cir. Jan. 7, 2015). Upon *de novo* review, the Second Circuit found that the ALJ erred by failing to fully consider and explain whether plaintiff's mental limitations precluded her from performing her past

---

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case.

relevant work as a teacher. [4]  *Id.* Plaintiff ultimately obtained a judgment of remand to the Commissioner on March 9, 2015. (Tr. 613-17)

During the pendency of her initial federal appeal, plaintiff filed a new application for benefits, alleging disability since January 25, 2011. (Tr. 599-612) Plaintiff's new application proceeded through the administrative process and plaintiff was granted a fully favorable decision on January 23, 2013. (Tr. 599-612) Specifically, the Commissioner determined that plaintiff has been disabled, as defined by the Act, since January 25, 2011. (*Id.*) Thus, the time-period relevant to the instant determination is a closed period from January 16, 2008, the alleged onset date, through January 24, 2011, the date the Commissioner found that plaintiff was disabled under the Act.

After plaintiff's appeal was grant by the Second Circuit, a new hearing was held before ALJ Timothy McGuan on July 29, 2016. (Tr. 504-33) On November 7, 2016, ALJ McGuan issued a decision denying plaintiff's claim for benefits for the closed period of January 16, 2008 through January 24, 2011. (Tr. 485-503) Plaintiff again appealed to this Court, and on June 28, 2019, this Court issued a Decision and Order granting remand. *See Abbott v. Comm'r of Soc. Sec.*, 17-CV-20, 2019 U.S. Dist. LEXIS 108741 (W.D.N.Y. June 28, 2019). This Court found that ALJ McGuan erred by failing "to make specific findings concerning the nature of plaintiff's stress, the circumstances that trigger it, and how those factors affect her ability to work." *Id.*

---

[4] The Second Circuit rejected the remainder of plaintiff's arguments on appeal. *Abbott*, 596 Fed. Appx. at 23. Specifically, the Second Circuit held that the ALJ did nor err in affording little weight to the assessment of Dr. Samant, plaintiff's treating physician, nor did the ALJ err in failing to seek additional information from Dr. Samant. *Id.* The Second Circuit further held that the ALJ did not err in discounting the portions of the consulting psychologist's opinion which lacked clear support in the record. *Id.*

Upon remand from the Appeals Council pursuant to this Court's finding of remand, another hearing was held before ALJ McGuan on March 12, 2020. (Tr. 1083-1113) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Melissa J. Fass-Karlin. ("the VE"). (*Id.*) On May 29, 2020, the ALJ issued a decision again finding that plaintiff was not disabled under the Act for the closed period of January 16, 2008 through January 24, 2011. (Tr. 1049-82) This action followed. (Tr. 1-6)

Born in January of 1958, plaintiff turned fifty years old shortly after her alleged onset date. (Tr. 133-37, 138-42) Plaintiff has a Bachelor of Arts degree and teacher certifications in dance and secondary English. (Tr. 167, 172, 756) She has past work experience as an office manager, salesperson, teacher, and tutor. (Tr. 167, 756)

## DISCUSSION

I.     *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is

"equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.*  §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the Act through December 31, 2016. (Tr. 1055) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim.  Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity from January 16, 2008 through January 24, 2011.[5] (Tr. 1055) At step two, the ALJ found that between January 16, 2008 and January 24, 2011, plaintiff suffered from the severe impairments of depressive disorder; panic disorder; attention-deficit hyperactivity disorder; and headaches.[6] (Tr. 1055-56) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 1056-58) Before proceeding to step four, the ALJ found that from January 16, 2008 through January 24, 2011:

> [T]he claimant had the residual functional capacity to perform medium work
> as defined in 20 CFR 404.1567(c) and 416.967(c) except she could do

---

[5] The ALJ noted that claimant performed work after the alleged disability onset date but that this work activity did not rise to the level of substantial gainful employment. (Tr. 1055) Specifically, plaintiff engaged in part-time employment after resigning her full-time position as a teacher in April 2008. (*Id.*) For example, plaintiff worked as a sales-person at a health spa and salon from approximately May 2008 through August 2008. (*Id.*) Plaintiff testified that, in 2009, she worked part-time for a Christian Academy, in early childhood education. (*Id.*) Plaintiff also engaged in some short-term, self-employment work in 2011. (*Id.*) The ALJ found that because plaintiff's earnings between January 16, 2008 and January 24, 2011 at various short-term, part-time jobs did not rise to the required statutory levels, the earnings did not constitute substantial gainful activity. (*Id.*)

[6] The ALJ also found, at step two, that plaintiff had lumbar spine and cervical spine pain, but that these conditions did not have more than a minimal impact on plaintiff's ability to perform basic work activities and were therefore non-severe. (Tr. 1056) The ALJ noted that these conditions were generally controlled through conservative, minimal medication and treatment and that lumbar spine x-rays on May 27, 2009 revealed completely normal results. (*Id.*) The ALJ also noted that the record contained no evidence of any ongoing treatment with an orthopedist, physical therapist, pain management physician, or other specialist. (*Id.*)

simple, unskilled work of a routine and repetitive nature. She could occasionally interact with the public, but she had no interaction limits with co-workers and supervisors.

(Tr. 1058-72) Proceeding to step four, the ALJ found that, from January 16, 2008 through January 24, 2011, plaintiff was not capable of performing her past relevant work as a teacher. (Tr. 1072) At step five, the ALJ considered plaintiff's age, education and RFC during the relevant period and found that there were jobs in existence in significant numbers in the national economy that plaintiff could have performed from January 16, 2008 through January 24, 2011, such as hand packager, kitchen helper, and cleaner. (Tr. 1072-73) The ALJ ultimately concluded that plaintiff was not under a disability, as defined by the Act, from January 16, 2008 through January 24, 2011. (Tr. 1074)

IV.    *Plaintiff's Challenges*

Plaintiff argues that the RFC was not supported by substantial evidence because the ALJ failed to account for plaintiff's limitation in dealing with stress. (*See* Dkt. No. 16 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees and finds that remand is not required on this basis.

In March of 2009, plaintiff presented for a psychiatric consultative examination with Thomas Ryan, Ph.D. (Tr. 294-97) Following an examination and assessment, Dr. Ryan opined that plaintiff had no significant limitation in her ability to follow and understand simple directions; perform simple tasks; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks; or make adequate decisions. (Tr. 296) Dr. Ryan assessed plaintiff with a moderate limitation in her ability to deal adequately with others and deal with stress. (*Id.*) The ALJ gave significant weight to Dr. Ryan's opinion, noting that Dr. Ryan's opinions, including his opinion that plaintiff was

moderately limited in handling stress, were supported by examination findings and predominately consistent with the other objective evidence in the record. (Tr. 1066-67)

Social Security Regulation 85-15 states that because "the reaction to the demands of work (stress) is highly individualized," the RFC assessment must reflect not merely the skill level that a claimant can perform, but also "the limitations created by an individual's response to the demands of work." SSR 85-15, 1985 WL 56757, at *6 (S.S.A. 1985). *See also Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments"). Thus, an ALJ is required to specifically analyze a plaintiff's limitations in dealing with stress and how those difficulties may affect her ability to work. *Haymond v. Colvin*, 1:11-CV-0631, 2014 U.S. Dist. LEXIS 68511 (WDNY May 19, 2014). A careful review of the ALJ's detailed decision here, considered in light of the record as a whole, demonstrates that the ALJ fulfilled this requirement.

Plaintiff worked as a teacher until January 16, 2008, at which time a traumatic incident caused her to resign from her job. (Tr. 368-69, 373-74, 826-31) Specifically, a group of disruptive students refused to follow directions; yelled obscenities at her; threatened her; pulled a phone from the wall, and blocked her from leaving the classroom. (*Id.*) During subsequent psychiatric treatment with Jaffri Medical Associates between January 2008 and September 2008, plaintiff reported disrupted sleep, anxiety, depression, tearfulness, flashbacks, panic, racing thoughts, difficulty concentrating, and nightmares. (Tr. 369-95) She reported increased stress related to monetary strain because of leaving her teaching job; housing issues; family dynamics and being a single

mom to five children; possible legal issues because of the incident at her job; and fear of retaliation from her former students. (*Id.*) However, as observed by the ALJ, plaintiff reported an improvement in her symptoms over the course of treatment with the prescribed medications of Adderall, Triletpal, and Celexa. (Tr. 368-76, 1060) The ALJ further noted that plaintiff reported only "sporadic" panic; an improvement in focus and concentration; and partial relief from her anxiety and depression. (Tr. 368-76, 394, 1060) The ALJ recognized that plaintiff was able to maintain some part-time employment during this period in a management role at a health and beauty spa, and that plaintiff acknowledged that her job was "going well". (Tr. 369-71, 1060) Moreover, the ALJ also noted that plaintiff consistently demonstrated good mental health status upon examination when treating with Dr. Jaffri, including appropriate thought content; adequate insight and judgment; cooperative attitude; appropriate affect; fluent speech; and intact concentration and memory. (Tr. 368-75) Indeed, while treatment notes from this period sometimes noted that plaintiff was worried, stressed, or tried, plaintiff reported she was "doing much better" in June 2008 and was "trying to get stuff done" in September 2008. (Tr. 368-75)

The ALJ also considered treatment notes from the Niagara County Department of Mental Health, where plaintiff received medication management and psychotherapy between August 2008 and September 2011. (Tr.1061) During that time, plaintiff continued to report symptoms of poor attention span, mood swings, depression, anxiety, mild paranoia, and lack of motivation. (Tr. 287-93, 348-50) She also continued to report stress because of financial issues; divorce and single parenting; and difficulty obtaining a job even though she had applied at several places. (Tr. 348-50, 414) However, as recognized by the ALJ, plaintiff's mental health examinations continued to show predominately good

results, including normal speech; average intelligence; good insight and judgment; alertness; clear, coherent and goal directed thoughts; no evidence of psychosis, paranoia, or delusion; friendly and engaging effect; cooperative attitude; intact memory; and no cognitive impairments. (Tr. 287-93, 348-50, 436-41) Plaintiff also continued to report that the medications both improved her focus and generally controlled her symptoms of anxiety, depression and ADHD. (Tr. 287-90, 348-50, 437, 1062-63)

After acknowledging and weighing all the evidence in the psychiatric treatment records discussed above, the ALJ concluded that while plaintiff experienced some mental health signs and symptoms, she could perform simple, unskilled work of a routine nature. (Tr. 1058, 1070) He explained that despite experiencing an anxious and/or depressed mood at times, plaintiff repeatedly showed good mental health status examination results and reported improvement in her mental health symptoms as a result of her prescribed medications. (*Id.*) In further support of his finding that plaintiff could perform simple and unskilled work, the ALJ noted that plaintiff was capable of a myriad of activities of daily living during the relevant period. (Tr. 1057-60, 1070-71) Indeed, plaintiff verified that she was able to dress, bathe, groom herself, cook, clean, do laundry, shop both at stores and online, pay bills, count change and drive. (175-82; 294-97; 302) Plaintiff acknowledged that she could care for her minor children and assist with the care of her granddaughter. (*Id.*) In fact, plaintiff often brought her children or grandchildren to her doctor's appointments. (Tr. 289) During one treatment session, the psychiatrist noted that plaintiff displayed "excellent parenting skills" in relation to her young daughter. (*Id.*) *See Krull v. Colvin*, 669 F. Appx 31, 32 (2d Cir. 2016) (affirming the ALJ's conclusion that plaintiff was able to work notwithstanding mental health symptoms, where she continued to engage in

moderately complex tasks such as helping with the care of her grandchildren, using computers, and other daily activities).

The Court rejects plaintiff's argument that additional analysis of plaintiff's ability to handle stress was required based on this Court's prior Decision and Order and the Appeals Council remand. (Tr. 1141, 1147) Indeed, this Court's prior decision granting remand noted that the ALJ failed to make specific findings concerning the nature of plaintiff's stress, the circumstances that trigger it, and how those factors affect her ability to work. (Tr. 1141-42, *citing Booker v. Colvin*, 14-CV-407, 2015 WL 4603958, at *3 (W.D.N.Y. July 30, 2015)) The ALJ fully corrected this error on remand. For example, the ALJ found that plaintiff's stress was primarily triggered or caused by concerns over safety after a threatening incident at her former teaching job; financial strain due to unemployment; issues regarding her divorce; and decisions about her home and children. (Tr. 1060; *citing* Tr. 289, 349, 368, 458, 462, 826-31) The ALJ acknowledged that while plaintiff sometimes experienced a worsening of mental health symptoms in response to these specific stressors, plaintiff was employed part-time as a spa manager during the relevant period. (Tr. 1060, *citing* 370) Moreover, she did not describe the experience as stressful but instead stated that it was going well. (*Id.*) The ALJ also noted that plaintiff showed an improved ability to cope with stress when on medication, and that there was no evidence in the record of repeat emergency department visits or extended inpatient hospital stays. (Tr. 1060-64) Thus, the ALJ logically reasoned that "stress, if any, would be minimal and manageable" once plaintiff was "limited to doing only simple, unskilled work of a routine and repetitive nature, and having only occasional interaction with the public." (Tr. 1071) Indeed, so long as the decision reveals that the ALJ considered and

accounted for stress limitations, like the ALJ did here, remand is not warranted. *Grega v. Berryhill*, 17-CV-6596, 2019 U.S. Dist. LEXIS 107104, (W.D.N.Y. June 26, 2019); *Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) ("With respect to [consultative examiner's] opinion that plaintiff is moderately limited with respect to stress, [the court] find[s] that the ALJ largely accounted for such limitation in her RFC finding[;] [t]he RFC limited plaintiff to simple, unskilled tasks with no more than occasional changes in the work setting and without an hourly, machine-driven assembly line production rate.").

The Court also rejects plaintiff's argument that the RFC finding disregarded Dr. Ryan's opinion that plaintiff was moderately limited in her ability to appropriately deal with stress. Dr. Ryan did not find that plaintiff was unable to work due to stress, and his assessment of moderate limitations in plaintiff's ability to deal with stress was not tantamount to a finding that plaintiff could not function in a work setting. To the contrary, courts in this Circuit have concluded that moderate mental limitations regarding stress are not disabling and can be accounted for with appropriate limitations, such as those incorporated by the ALJ here. *See Lafond v. Astrue*, 6:12-CV-6046, 2013 U.S. Dist. LEXIS 27789 (W.D.N.Y. Feb. 28, 2013) ("ALJ adequately accounted for [claimant's] limitations in dealing with stress by restricting him to simple and repetitive tasks; no fast-paced production requirements; the necessity of making only simple decisions; and few, if any, changes in the workplace.") *Alexandrea R. R. v. Berryhill*, 5:18-CV-121, 2019 U.S. Dist. LEXIS 88428 (holding that the ALJ accounted for "moderate to marked limitation in . . . appropriately deal[ing] with stress" in finding that claimant had the RFC to "make simple decisions directly related to the completion of her tasks and work in a position where she is not responsible for the work of others and with little change in daily routine,

work duties or processes"); *Uplinger v. Berryhill*, 18-CV-481, 2019 U.S. Dist. LEXIS 164403 (W.D.N.Y. Sept. 25, 2019) ("Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements.").

For all these reasons, the Court finds that the ALJ properly considered plaintiff's moderate limitation in handling stress and appropriately addressed this limitation in formulating the RFC. Thus, the Court declines to remand the matter on this basis.

Plaintiff also argues that the RFC was not supported by substantial evidence because the ALJ failed to properly account for her limitation in dealing adequately with others. (*See* Dkt. No. 16 (Plaintiff's Memo. of Law)) Here, the Court agrees with plaintiff, and finds, for the following reasons, that remand is necessary for the Commissioner to more fully address plaintiff's limitations in dealing with others.

Plaintiff reported that, during the relevant time period, she had difficulties getting along with others and experienced social withdrawal. (Tr. 180, 1057-59) Plaintiff also testified that she was unable to work because of her anxiety. (Tr. 1088, 1093) Plaintiff represented that while she was able to take her children and grandchildren to various places and appointments, she was uncomfortable or fearful in groups of people other than family or friends. (Tr. 175-81, 1057) Plaintiff reported that she did not have a problem getting along with bosses or other people in authority. (Tr. 180-82, 1057) However, she also reported that she lost jobs in the past due to "indirect" conflict with others. (*Id.*) For example, shortly before the incident which caused her to leave her teaching position,

plaintiff wrote a document indicating that she heard reports that several teachers were "working against her." (Tr. 832-33) After the incident, plaintiff reported to a treating physician that the school administration was harassing her over the incident; that other teachers indicated they would not help her if someone attempted to hurt her; and that she believed the teacher's union was not advocating for her as they should. (Tr. 272, 274, 275) In addition to plaintiff's own representations, the ALJ assigned significant weight to Dr. Ryan's opinion that plaintiff was moderately limited in her ability to adequately deal with others. (Tr. 1057, 1066-67) Thus, there was medical evidence as well as other evidence in the record, which the ALJ apparently credited, showing that plaintiff experienced moderate difficulties with social interaction and getting along with others.

The basic demands of competitive, remunerative, unskilled work include the ability (on a sustained basis) to respond appropriately to supervision, co-workers, and usual work situations. *See* SSR 85-15, 1985 WL 56857 at *4 (S.S.A., 1985). Further, "a limitation in interacting with the public is not equivalent to a limitation in interacting with co-workers or supervisors." *Smith v. Colvin*, 1:16-CV-00295; 2017 U.S. Dist. LEXIS 17226 (W.D.N.Y. Feb. 7, 2017). *See also Nickens v. Colvin*, 14-140, 2014 U.S. Dist. LEXIS 133877 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Defendant's mental residual capacity forms. Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third."). For these reasons, it is vitally important for an ALJ to have substantial evidence supporting his conclusion that a plaintiff can respond appropriately to co-workers, supervisors, and the public. *See Smith*, 2017 U.S. Dist. 133877. Moreover, an RFC which goes to mental impairments must be sufficiently

specific and supported by detailed evidence. *See Martin v. Colvin*, 1:15-CV-01067, 2017 U.S. Dist. LEXIS 11067, *8-9 (W.D.N.Y. Jan. 26, 2017) (an ALJ's duty to develop the record is heightened where mental conditions are present).

In rendering the instant RFC, the ALJ restricted plaintiff's interactions with the public but placed no restrictions on her interactions with supervisors or co-workers. To the extent an ALJ distinguishes between the groups with whom a claimant can interact, he must explain and provide support for that distinction. *See Luke H. v. Saul*, 19-CV-720, 2020 U.S. Dist. LEXIS 133301 (N.D.N.Y. July 28, 2020). The ALJ failed to provide such support or explanation here. In fact, nowhere in the opinion did the ALJ specifically discuss or analyze plaintiff's ability to interact with supervisors or co-workers, nor did he explain why he treated plaintiff's ability to interact with the general public different than with supervisors and co-workers. This error is especially significant here, because the ALJ accepted Dr. Ryan's opinion that plaintiff was moderately limited in dealing with others and Dr. Ryan did not differentiate between the public, supervisors, or co-workers. Furthermore, the record contained at least some additional evidence that plaintiff was generally limited in social and professional settings, and that this limitation may extend to her ability to frequently interact appropriately with co-workers and supervisors in the workplace. *See Michelle A. v. Saul*, 19-CV-00991, 2020 U.S. Dist. LEXIS 230508 (W.D.N.Y. Dec. 8, 2020) ("The ALJ's failure to then either impose a limitation as to plaintiff's ability to interact with supervisors, or to explain, based upon the evidence in the record, why one was not necessary, is an error which requires remand."); *Rivera v. Berryhill*, 18-CV-122, 2019 U.S. Dist. LEXIS 128829 (W.D.N.Y. Aug. 1, 2019) (remand required where the hypothetical posed to the vocational expert imposed no limitations on

plaintiff's ability to interact with co-workers or supervisors even though the ALJ determined that plaintiff had moderate limitations in interacting with others and accepted the consultative examiner's opinion that plaintiff was moderately limited in his ability to relate adequately with others and socialize); *Joseph H. v. Comm'r of Soc. Sec.*, 3:19-CV-587, 2020 U.S. Dist. LEXIS 91254 (N.D.N.Y. May 26, 2020) (". . . the ALJ compounded her error by failing to explain how she determined that plaintiff could tolerably interact with co-workers and supervisors up to one-third of the workday but not the general public, when the medical opinion evidence in the record made no such distinction regarding plaintiff's limitations in interacting with others.").

"The ALJ must build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review." *Pamela P. v. Saul*, 3:19-CV-575, 2020 U.S. Dist. LEXIS 88603, (N.D.N.Y. May 20, 2020) (internal quotations and citations omitted). For the foregoing reasons, the Court finds that the ALJ failed to make this necessary connection when evaluating plaintiff's ability to interact with others, thus precluding meaningful review. On remand, the Commissioner should fully consider and account for plaintiff's ability to interact with supervisors and co-workers by either including an appropriate restriction in the RFC or by explaining, with citations to specific evidence in the record, why no such restrictions are needed.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 16), defendant's motion for judgment on the pleadings is denied (Dkt. No. 18), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated:      July 13, 2022
            Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge